## FOWLER v. MEDICAL ARTS BLDG. et al.

No. 6986.  Decided January 16, 1948.  (188 P. 2d 711.)

See 5 C. J. S., Appeal and Error, sec. 1848. Liability for injury to elevator passenger as affected by the fact that sides of car are open and unprotected, see note, 57 A. L. R. 259. See, also, 18 Am. Jur. 531.

*Moyle, McKay, Burton & White,* of Salt Lake City, for appellant.

*Elias Hansen,* of Salt Lake City, for respondent.

WADE, Justice.

A jury awarded plaintiff a substantial verdict against the defendants as damages for the death of his three year old son, David John Fowler, who was killed on April 27, 1944, at about 3:00 p. m., in an accident on the elevator of the corporate defendant's building. Defendants appeal from such judgment.

The Medical Arts Building is a 10 story office building in Salt Lake City in which three elevator shafts are built side by side. Kimball elevators, a standard make, are installed therein, they operate at two speeds, the faster speed is usually used which at its highest speed moves at the rate of about 400 feet per minute. The speed at which these elevators start and which they attain as they continue to move is controlled automatically. The high speed does not start any faster than the slow speed, but only continues to attain greater speed for a longer period of continuous running. The operator can move the cage either up or down, or stop, or move either at high speed or low speed. The speed at which it starts and stops are controlled automatically.

There is no door on the elevator cage, and as the cages moves up and down there is an open space in the front

thereof, which opens either into the doors or the elevator shaft. There is a door at the entrance of each of the elevator shafts on each floor, consisting of two panels each of which runs in a separate groove one behind the other; the doors open and close by each panel sliding along its groove, and is operated by a cross bar with an elbow in the center which runs horizontally across the doors the full width of the two panels about five feet above the floor. When the doors are closed the center edges of the two panels are about even and slightly overlap each other, and the outer edges of these panels are against the door frame. When they are opened they slide to one side and one door is in front of the other. When the floor of the elevator cage is even with one of the floors of the building, there is only an inch or less space between them. When the doors are closed and the floor of the elevator cage is opposite some part of the doors there is a space of about $4\frac{3}{8}$ inches or more between the edge of the elevator floor and the farther panel of the door, a space of about $3\frac{1}{2}$ inches between the near panel of the door and the floor of the elevator cage, and a space of only $1\frac{1}{2}$ inches between the inside edge of the cross bar and the edge of the elevator cage floor. Thus the horizontal cross bar projects about three inches or more nearer to the floor of the elevator cage than the inside of the farther door. The doors and cross bar remain stationary on the floor where they are built, while the elevator cage moves up and down past them, and while this is taking place there is nothing except empty space between the passengers on the elevator cage and the doors and cross bar.

Shortly before the accident, Mrs. Fowler, the mother of the deceased boy, whom we will hereinafter call Johnny, and her sister, a Mrs. Smith, with three children were on the third floor of the Medical Arts Building, looking for the office of a Dr. Chase. Mrs. Smith was accompanied by her daughter Marilyn and Mrs. Fowler by her daughter Charlotte and by Johnny. Each of the girls were older than Johnny. When the elevator going up stopped, Mrs. Fowler inquired of the operator for Dr. Chase's office and was told

it was on the ninth floor, whereupon they all entered the elevator. As they did so, according to plaintiff's version of the facts, Mrs. Smith was holding Johnny's hand in one of hers and in the other she was holding her daughter Marilyn's hand. The elevator, after they had entered, was filled nearly but not quite to its capacity. In order to turn around to face the doors Mrs. Smith released her hold on Johnny's hand while he was between her and the doors and before she had completely turned around and before she had time to take his hand again the elevator started with a jerk. According to all the substantial evidence of all parties, with the start of the elevator Johnny lost his balance and fell forward toward the door his head coming in contact therewith, his head against the door was pushed upward until it came in contact with the bottom of the cross-bar across the door which projected out from the farther panel of the door three inches or more, this bar caught his head thereby preventing it from continuing to go on up with the elevator, and as the elevator continued to go on up, first his head and then the rest of his body was forced between the doors and the elevator floor, and as the elevator passed on up above his body he fell down to the bottom of the elevator shaft, more than fifty feet below. When the building engineer reached him there, his face was mangled beyond recognition and he was dead.

Of the facts stated above only three are in dispute. Mrs. Fowler testified that when Johnny fell, the third floor doors leading into the elevator shaft were opened. She was not corroborated in this by any other witness, and most of the physical facts seem to indicate the contrary. If the doors were opened he would simply have fallen through an open space onto the third floor. Since he was moving away from the elevator shaft his momentum would probably carry him away therefrom far enough so that he would not fall into it. All of the witnesses give the impression that he was pulled through a narrow space rather than that he merely fell through an open door. Both Mrs. Smith and Mrs. Fowler expressed the idea that there was time enough in

his going for the elevator girl to have stopped the elevator in time to save him. If he had just fallen forward through an open door as soon as he fell he would have been gone. Mrs. Smith described his going as being like clothes being pulled through a wringer. There was a spot of what was described as fresh blood on the elevator floor. However there was no evidence that the cross bar had any blood on it. The building engineer was positive that the electrical contact with the machinery which runs the elevator would be broken whenever the door was opened. Thus there was no substantial evidence from which the jury could reasonably conclude that the door was open when he fell.

Defendant Norma Peterson, the elevator operator at the time of the accident, testified that there was no jerk in starting the elevator, and that Mrs. Smith, Mrs. Fowler and Johnny were all facing the doors and that Mrs. Fowler was holding Johnny's hand when she started. All the witnesses, except Mrs. Smith and Mrs. Fowler, who were on the elevator when the accident occurred testified that they did not notice any unusual jerk in starting. The building engineer testified that the starting was automatically controlled so that if it started at all it could not start with a jerk. A police officer testified that he inspected this elevator immediately after the accident, while it was being operated by the building engineer and that it did not then start or stop with a jerk. Plaintiff called two other witnesses, neither of whom were related to, or prior to the accident, acquainted with the plaintiff or his family. Each testified of riding the elevator on which Johnny was killed, on different occasions, within a week prior to the accident while it was being operated by other operators, and that on such occasion the elevator both started and stopped with a jerk, both on regular stops and between floors and that before the top floor was reached the passengers were asked to take another elevator.

The defendants did not directly contradict this testimony. Although the operators of the elevators on these occasions were described, and the times when these incidents occurred

were quite definitely fixed, the defendants did not call such operators or make any showing that they were unable to do so. Nor did they call any other person who was riding on the elevator on either of those occasions. They argue that the testimony of these two witnesses was not admissible in evidence. They cite cases to the effect that evidence of negligence on one occasion may not be proven by showing similar acts of negligence on previous occasions. Those cases are clearly not in point here. The defendants used the same kind of testimony to prove that the elevator did not jerk in calling the city policeman who inspected the elevator immediately after the accident, and testified how it operated while the building engineer was operating it. The only difference is that the policeman observed the operation immediately after the accident and one of plaintiff's witnesses testified of an incident within a week prior thereto and the other testified of an incident which occurred on the Tuesday prior to the accident which occurred on Friday. Defendants' evidence showed that no repairs had been made in the meantime. Under such circumstances this evidence was not too remote. It had some probative value on the question of whether the elevator started with a jerk. The facts that it started with a jerk on these previous occasions and that no repairs were made in the meantime, increases the probability that it so started at the time of this accident, and definitely refutes defendants' evidence to the effect that it was impossible for this elevator to start with a jerk. In any event this evidence was clearly admissible to show that the corporate defendant had knowledge through its employees, the operators of the elevators on those prior occasions, that the elevator was out of repair. 18 Am. Jur. 561, section 73; 38 Am. Jur. 757, Section 97; 45 C. J. 651, section 25.

Mrs. Smith and Mrs. Fowler both testified that before they had time to turn around and face the doors, or take Johnny's hand, the elevator started, and that neither of them were holding him at that time. Their description of what they saw is in harmony with this testimony: They described

entering the elevator, its starting, and of seeing him disappear as if drawn through a wringer, of trying to grab him when it was too late, and of thinking that the elevator girl could have stopped the elevator in time to save him had she acted promptly. They did not claim to have seen him lose his balance and teeter and fall when the elevator started, nor of seeing the cross bar on the door catch his head. What they testified to seeing is exactly what they would have seen if the elevator started before they had time to turn around.

The two eye witnesses to the accident produced by the defendants were facing the elevator when Mrs. Smith and Mrs. Fowler entered. They naturally saw and described in detail that when the elevator started Johnny lost his balance and teetered and fell, and his head was caught by the cross bar. Both of these witnesses admitted that Mrs. Smith and Mrs. Fowler were not completely turned around and facing the door when the elevator started, and one of them was positive that no one was holding his hand at that time, the other was not sure on that point. Although neither of these witnesses would admit that there was any unusual jerk in starting, or that the elevator started before Mrs. Smith and Mrs. Fowler had time to turn around, still their description of these events are in harmony with Mrs. Smith's and Mrs. Fowler's testimony on that point. Naturally a person who is in an elevator waiting for it to go on up, and is facing the persons who enter, would see what happened to Johnny when it started. Since they were waiting for the elevator to proceed, and as one of them testified, in a hurry to get to their destination, they would not be impressed by the fact that it did start before those entering were ready, nor would they notice a jerk like a person who is entering and at the moment off balance. One of these witnesses testified tht Mrs. Fowler, by putting her hand to her head indicated that she saw the accident. But that does not indicate that she saw the first part of it when Johnny lost his balance and fell and the cross bar caught his head. This evidence is ample from which the jury could reasonably

find that the elevator started before these women had time to turn around and resume holding Johnny's hand and that it started with a jerk.

This disposes of defendants' contention that the evidence is conclusive that Mrs. Smith and Mrs. Fowler, or one of them, was guilty of contributory negligence in not holding Johnny's hand when the elevator started, and that such negligence is sufficient to defeat plaintiff's right to recover. Whether such is the law we do not have to decide and therefore express no opinion thereon. Such contention is based on the assumption that the evidence is conclusive that Mrs. Smith and Mrs. Fowler had ample time to turn around and face the doors and to take hold of Johnny's hand and that they failed to do so. Since as pointed out above the evidence is such that the jury might reasonably find that the elevator started before they had time to turn and resume holding his hand, in which event there was no contributory negligence, this contention is not well founded.

Defendants argue that there was no evidence of negligence on their part which proximately caused the accident. In this connection they argue that the complaint does not charge them with *negligence which proximately caused the accident* in starting the elevator too soon. The complaint is somewhat ambiguous in this respect. It first details the facts as plaintiff claims them to be with reference to the accident from the time they entered the elevator to the time the boy fell down the elevator shaft. In doing so they allege that the elevator started before they had time to completely get onto and turn around and face the doors thereof, without characterizing such acts as negligence. It then continues in the same sentence and charges that as the direct and proximate result of the negligence of the corporate defendant in certain specified particulars and the negligence of the defendant Peterson in certain other specified particulars the boy was killed. In specifying the grounds of negligence which proximately caused the death the complaint does not repeat the allegation that the elevator started before they had time to get in and turn around,

but after repeating most of the events which are set out in the first part of the sentence it adds as "herein alleged." Plaintiff argues that by adding the term "as herein alleged," it was intended to refer back to the allegation that the elevator was started too soon. The complaint attempts to state a number of negligent acts which all taken together proximately caused the accident rather than to allege several separate and distinct negligent acts each of which in itself was the proximate cause of the accident. Taking the complaint as a whole no one could be mislead into thinking that plaintiff was not relying on his allegation that the elevator was started too soon as one of the acts of negligence which proximately caused the accident. And defendants were not so mislead. During the trial, without any objection of the defendants, plaintiff adduced evidence to that effect, and defendants cross-examined in detail on that question. In presenting their own evidence defendants directed the attention of their own eye witnesses of the accident to that question and placed in evidence their views thereon. This was one of the main issues in the trial, and defendants do not now contend that they were mislead and as a result thereof were not able to fully present their evidence on that question. They raise that question for the first time on this appeal. Under these conditions the trial court did not err in submitting that question to the jury.

Nor is there any merit to defendants' contention that the evidence does not justify a finding that their negligence was the proximate cause of the accident. The evidence shows that Mrs. Smith entered the elevator holding the hands of two children, Johnny the younger of the two being less than three years old, that when they entered the elevator was practically filled to capacity, that in entering she faced the back of the elevator and in turning around to face the elevator doors she released her hold on Johnny's hand so he would not have to walk around her in the crowded elevator, that with Johnny standing between Mrs. Smith and the elevator doors and while they were in the act of turning

around and before they had time to face the doors or to resume holding his hand and while he was standing in front of the doors unsupported by any adult person and while the operator was in a position so that she could plainly see all of those facts and circumstances the elevator was started, and as it did so, Johnny lost his balance and teetered forward into the elevator doors, and his head was caught by the cross bar and was held there so that as the elevator continued to go up, first his head and then his entire body was forced through the space between the doors and the floor of the elevator cage, and when it had passed on up above him his body fell to the bottom of the elevator shaft. That Mrs. Smith and Mrs. Fowler, his mother not being fully turned around did not see him fall but only saw him as he was being pulled through the space, that they then tried to grab him but it was too late, and the operator tried to stop the elevator but it did not stop until it had passed on above his body.

The evidence as above pointed out was ample from which the jury could reasonably find the foregoing to be the facts, and from such facts they could conclude that the negligence of the defendants in starting the elevator too soon, under the surrounding facts and circumstances, was the proximate cause of the accident and death. Defendants concede, in fact they urge, in support of their claim that Mrs. Fowler and Mrs. Smith were guilty of contributory negligence in not holding Johnny's hand when the elevator started, that it was highly dangerous for this small boy to stand unsupported in front of these doors when the elevator started. They contend that even though the start was without a jerk it would be very apt to cause him to lose his balance and fall forward as he did into the doors. One of their witnesses, a mature woman used to riding elevators, testified that when the elevator goes up it always causes her to throw herself slightly forward, unless she carefully guards against it. In view of this evidence, with the space between the doors and the elevator cage floor, and the cross bar projecting into the elevator shaft

in front of the doors it is evident that it would mean almost certain death for a child to fall against those doors below the cross bar. Under those circumstances to start the elevator with a small boy standing unsupported in front of those doors with the cross bar projecting toward him was highly dangerous to him. The jury was amply justified in finding that the defendants' negligence in so doing was the proximate cause of the accident and death.

The court in defining the issues which the jury must decide read almost verbatim the pleadings of the parties. Defendants contend that this was error. That it requires the careful attention of a trained legal mind to glean from the pleadings the issues of fact presented thereby, and that it is too much to expect a jury of laymen in the short time they have, to be able to do so, that there were issues of fact made by the pleadings which were not supported by any evidence; that there were facts alleged in plaintiff's complaint which were either not denied by defendants or which were not controverted in the evidence which therefore should not have been stated to the jury and that the pleadings did not squarely present the exact issues of fact which were developed in the evidence. That such instruction had a tendency to mislead and confuse the jury rather than clarify the issues for them. The instructions as given under the facts of this case were objectionable under each of the foregoing grounds and the court erred in so stating the issues of fact to the jury. *Pulos* v. *Denver & Rio Grande Railroad Co.*, 37 Utah 238, 107 P. 241, Ann. Cas. 1912C, 218; *Smith* v. *Columbus Buggy Co.*, 40 Utah 580, 123 P. 580; *Davis* v. *Heiner*, 54 Utah 428, 181 P. 587; *Shields* v. *Utah Light & Traction Co.*, 99 Utah 307, 105 P. 2d 347; *Anderson* v. *Nixon*, 104 Utah 262, 139 P. 2d 216. In these cases we held that it was the duty of the court to construe the pleadings and the evidence for the jury and therefrom state the issues of fact which they must determine in simple and concise language which laymen can understand and not leave the jury to glean the issues from pleadings, stated in lawyers terms and which require the careful study of a trained

legal mind to understand. We further held that the court should not submit issues to the jury which were not supported by evidence or state to the jury allegations of the plaintiff which were not controverted by the pleadings and the evidence of the defendant.

The pleadings were so ambiguous, as previously pointed out, that counsel have spent much time in their briefs and oral arguments on their meaning. The pleadings are couched in legal terms not the language of laymen, for the most part the plaintiff's allegations were in one paragraph of this instruction and the defendants' answer to such allegations in another. It would require time and carefull study of a mind trained in the law to determine therefrom the exact issues of fact presented. Many of the allegations of the complaint were admitted in the answer, such as the corporate existence of one of the defendants, its employment of the other defendant and its ownership of the building and elevator in question, the court recited in this instruction all of these admitted facts and stated that they were admitted. There were many other facts alleged in the complaint which in a general way were denied in the answer but were not controverted in the evidence, such as the existence of a four to five inch space between the elevator cage floor and the doors from the floors of the building into the elevator shaft, and other like details of the construction of the elevator shaft and how the accident happened, all of these allegations were stated in this instruction, and it was stated that they were denied by the answer and thus submitted to the jury for determination although they were affirmatively proved by the evidence of all the parties. Also under this instruction the court submitted the question of whether the doors from the third floor into the elevator shaft were opened when Johnny fell forward, as we have previously pointed out there was no evidence to justify the submission of that issue to the jury.

Another objection to this instruction is that the pleadings do not squarely present the facts as they were developed by the evidence. The theory of the complaint is that Johnny

fell forward through the open doors leading into the elevator shaft to the third floor and from there down the elevator shaft or that he fell through the four to five inch space between the doors and the floor of the elevator cage and the closed doors leading into the elevator shaft. No mention is made in the complaint or in this instruction of the cross bar across the doors in the elevator shaft which projected out from the doors toward the cage three inches or more and which caught Johnny's head and pulled him through the narrow space between the doors and the cage floor as the elevator proceeded upward. The evidence is conclusive that he fell against the closed doors while the elevator was moving upward that his head was caught under the bar across the doors and he was drawn through the space between the elevator cage floor and the doors as the cage continued to move upward and then fell to the bottom of the shaft. By that instruction this variation of the proof from the pleadings was not directly submitted as a surrounding circumstance on which to base negligence on the part of the defendants.

In jury cases the court should carefully analyze the pleadings and the evidence and determine therefrom the controverted issues of fact and submit for the jury's determination only such issues. Such issues should be stated in simple, direct and concise language which laymen understand. The court was in error in thus defining the issues of fact which the jury must determine, but was such error prejudicial to the defendants? In the above cases only one was expressly reversed on the grounds that the issues were improperly stated, two were reversed for other reasons and two were affirmed in spite of the erroneous instructions. Section 104-14-7 and 104-39-3 both of U. C. A. 1943, require that no judgment shall be reversed on any error which does not affect the substantial rights of a party. In *Davis v. Heiner*, supra, we refused to recognize the rule that prejudice is presumed from error and held that the burden of establishing prejudice is on the party affirming it. With this in mind we will answer the question: Have the

defendants shown that they were prejudiced by this instruction?

Aside from the questions of negligence and proximate cause of the accident, the facts to be determined by the jury were not complicated. As previously pointed out there were only two controverted material facts which were sufficiently supported by the evidence to be submitted to the jury. These were: 1. Did the elevator cage start upward before Mrs. Smith and Mrs. Fowler had time to turn around and face the doors and take hold of Johnny's hand? 2. Did the elevator start with a jerk? The evidence on all other facts, whether submitted to the jury or not, was so conclusive that there is little probability that the jury reached an erroneous conclusion respecting any of them. This is true even of the question of whether the doors were opened when Johnny fell, which was erroneously submitted to the jury, there being no evidence to justify a finding that the doors were opened at that time. Defendants therefore have failed to show that they were prejudiced by the submission of uncontroverted facts to the jury for determination, or the recital in this instruction of uncontroverted facts.

The jury was called upon to decide whether under the surrounding facts, conditions and circumstances shown by the evidence the defendants were guilty of negligence which proximately caused the accident. As previously shown the jury might reasonably conclude that the defendants were guilty of such negligence under the surrounding facts, conditions and circumstances if they found that the elevator was started too soon. This would be especially true if they further found that it started with a jerk. The complaint bases the charge of negligence not on one single act, condition or circumstance but on a combination of all the surrounding facts, conditions and circumstances alleged therein. In determining that question the jury should have taken into consideration all of the surrounding facts, conditions and circumstances shown by the evidence, including the open space between the elevator doors and the elevator floor with a projecting cross bar across the doors and the

manner and time of starting the same on this occasion and determine therefrom whether the defendants acted as a reasonably prudent person would act under those circumstances. By this instruction the jury was told that plaintiff had alleged all of the facts which are set out in his complaint, which included all of the material facts disclosed by the evidence which tend to prove that defendants were negligent except the existence of the cross bar in front of the elevator doors. Although the Court did not point out the existence of this cross bar as a fact which the jury could consider in determining whether defendants were negligent, and did tell them that certain facts, which were conclusively shown by the uncontroverted evidence, were denied by the defendants thereby erroneously inferring that an issue on such facts were presented for their determination, the defendants case could not be prejudiced thereby. If there were errors in that respect they were more favorable to defendants than the evidence justified.

The court should have directly pointed out and submitted to the jury for their determination all of the material issues of fact of which there was a controversy in the evidence. And where, as here, there were material facts which were conclusively established by the uncontroverted evidence so that no reasonable minds could disagree thereon, the court could properly instruct the jury that in arriving at their verdict they must consider such facts to be the facts in the case. It would also not be improper for the court in submitting the question of the defendants' negligence and the proximate cause of the accident to the jury to recite to them the facts on which such questions are based and to instruct them that in determining those questions it is their duty to take into consideration all of the facts which were conclusively established by the evidence as well as all other surrounding facts, conditions and circumstances which from the evidence they found to exist and which have a bearing on those questions. Thus the defendants were not prejudiced by the recital of the allegations of plaintiff's complaint.

The corporate defendant contends that it was not negligent on account of defective construction of the elevator and shaft. It claims that from four to five inches space between the floor of the cage and the door in the elevator shaft with no door on the elevator cage or other protection between the passengers and the doors and cross bar in the elevator shaft is a common practice in properly constructed elevators in this city and therefore not sufficient grounds to support a charge of negligence on the part of such defendant. While the complaint does charge negligence in the faulty construction of the elevator and shaft, as previously pointed out it charges negligent operation of the elevator in view of all the surrounding facts, conditions and circumstances and among the surrounding circumstances was mentioned the construction of the elevator which it charged to be faulty and negligently done, but it does not charge that such faulty and negligent construction of the elevator and shaft was a separate and distinct ground of negligence which was sufficient in itself without the negligent starting of the elevator on which to base such defendant's liability. Since the issues of this case were submitted to the jury only in the language of the complaint and the complaint does not charge that the faulty construction of the elevator and shaft was a separate ground of negligence, we are not required to here determine whether the faulty construction of the elevator and shaft was in and of itself without the surrounding facts, conditions and circumstances sufficient to support a finding of negligence, but only whether all the surrounding facts, conditions and circumstances here disclosed by the evidence were sufficient to sustain the verdict. As previously demonstrated the evidence on that question was ample. This instruction could not have misled the jury into finding the corporate defendant guilty of negligence solely on the grounds of defective construction of the elevator and shaft. The facts shown by the evidence regarding the construction of the elevator were certainly factors which the jury could consider in determining whether the defendants were negligent or not.

We are therefore not required to determine whether the manner of the construction of the elevator was alone a sufficient ground of negligence to sustain the verdict and we express no opinion thereon.

The issue of whether the elevator doors were open or closed was submitted to the jury by instructions Nos. 1 and 4. In instruction No. 1 the court stated the issues in the language of the complaint thereby stating plaintiff's allegations of negligence. By instruction No. 4 the court in substance told the jury that before they could find the defendants liable they must be convinced from the evidence that the defendants were negligent in

"some one or more acts or omissions on the part of the defendants alleged in the complaint as negligence."

The defendants made no request and took no exception which was calculated to advise the trial court of their contention which they make here that there was no substantial evidence to support the allegation that the doors were open when the cage started. Their exception to the first paragraph of instruction No. 4 was that the evidence was not sufficient to justify the court in submitting any issue of negligence to the jury. This amounted to no more than an exception to the court's refusal to direct a verdict. Nor did their exception to instruction No. 1 call the court's attention to their claim made in this court that the evidence was insufficient to sustain a finding that the door was open. That exception was only to the effect that the instruction contained too complete a recapitulation of the allegations of the complaint.

Be that as it may, it was not likely that prejudice resulted from the instructions of which they complain. Even if the door was not fully closed when the elevator started, still the starting of the elevator before the aunt had time to turn around and grasp the child's hand would have to occur before the open door would present a hazard. There clearly is no causal relation between the doors being open and the child losing its balance. If the negligence of the defendants

caused the child to be thrown from his feet under the circumstances testified to, the jury would hardly be justified in concluding that the defendants were not liable for the result, whether the doors were open or closed. If open, we are confronted with another negligent condition which permitted a passenger to fall out. If closed, then the described time and manner of starting the elevator in view of the construction of the doors, cross-bar, cage and elevator shaft was nevertheless negligent and the result forseeable. If the child was pitched forward by the movement of the elevator and the door being closed, he fell with his head in such a position that he was crushed between the elevator floor and the cross bar, the result is the same, both with respect to the negligence and proximate cause, as it would be were the doors open.

Even though the child of its own volition moved towards the doors and being struck by the cross bar was pulled between the space between the doors and the elevator floor, or thus moved and fell through the open doors, the negligence alleged was shown. The moving of the elevator before the aunt had time to turn around and grasp the child's hand placed him in a hazardous situation regardless of whether the door was open or closed. We are here dealing with the duty which the owner and operator of this elevator owed to this infant passenger in operating this open cage elevator. Any explanation of the accident predicated on a due care starting of the elevator is wholly unreasonable. Nowhere is it alleged, testified to or intimated, that the child walked or fell out through the open doors uninfluenced by the premature or sudden movement of the elevator.

It must be borne in mind that the complaint here is not, nor was it in the trial court, of a variance between pleading and proof. The complaint is of the insufficiency of the evidence and error in the instructions. We find no prejudicial error.

Other errors were assigned and argued by defendants which we have not discussed in this opinion, but we have carefully considered all of them and feel that there is ob-

viously no merit to any of them. The judgment of the trial court is affirmed. Respondent shall recover his costs of appeal.

McDONOUGH, C. J., concurs.

WOLFE, Justice (concurring in the result).

I concur in the results of the prevailing opinion, but my reasons for so doing are so different from those therein set forth that I shall state them.

In this opinion, I shall follow the plan used by the defendants and group the assignments of error under the various points of law which are raised. Thus several assignments of error may be treated or disposed of in the discussion of one point of law.

The first point raised by the defendants is that there was insufficient evidence to support the verdict and that it was contrary to law. As noted in the prevailing opinion, plaintiff alleged several different acts or omissions on the part of the defendant as negligence.

As to the allegations of the plaintiff that the elevator was started upward without closing the doors leading into the hall, I have grave doubts that there was sufficient evidence to justify the submission of this question to the jury. There was some evidence, both direct and circumstantial, that the doors were left open, but I am rather of the opinion that it was a mole-hill against a mountain when compared to the evidence adduced by defendants that the doors were closed before the elevator was started. However, the question of whether or not such evidence was sufficient to go to the jury is one which I think we need not decide because in the view I take of the case it has not been properly brought before us by any proper exception. I shall discuss this more fully hereafter.

As to all of the other allegations of negligence, I think there was sufficient evidence in proof of them as to justify the submission of the issue of negligence to the jury.

Both Mrs. Fowler and Mrs. Smith testified that the elevator was started upward suddenly, with a violent jerk, and before they had time completely to enter the elevator and to arrange themselves. Defendants introduced testimony by other witnesses which tended to contradict plaintiff's evidence. The question was properly submitted to the jury.

As to the question of negligence in the construction of the elevator, there was little dispute as to the physical facts. The evidence shows without conflict that there was a space between the front edge of the elevator floor and the door leading from the elevator into the hall. This space was either five inches (plaintiff's evidence) or $4\frac{3}{8}$ inches (defendant's evidence). Whether or not the arrangement adopted by the defendant corporation of permitting this space to exist, amounted to negligence was a question of fact properly submitted to the jury. And, in determining whether or not the existence of this space between the floor and the doors amounted to negligence, the jury was entitled to consider the surrounding facts and circumstances—for example, the fact that there were no doors on the elevator cage.

Since the question of negligence in the construction of an elevator is new here, and is one of the most important points involved in the case, and is a question to which both parties devoted considerable time and space in their briefs and oral arguments, I think the question ought to be more fully treated than it is in the prevailing opinion and therefore I append the following discussion:

The defendants contend that as a matter of law there was no negligence in the construction or maintenance of the elevator equipment. In support of this proposition they have cited *Digelormo* v. *Weil,* 260 N. Y. 192, 183 N. E. 360, 363. In this case a six-year old boy was caught in an 8 11/16 inch space between the shaftway door and the elevator gate. It was an automatic elevator and the plaintiff's theory of recovery was the negligent manner of construction in permitting the space to exist. Recovery was denied. However,

in that case there were doors on the elevator cage as well as doors into the shaft. Nobody saw the accident or knew how it occurred. It could be explained on several different theories. The plaintiff suggested a theory on which the defendants would be liable. Other theories were suggested on which liability could not be predicated. The court said:

"The rule is well settled that where there are several possible causes of injury, for one or more of which defendant is not responsible, the plaintiff cannot recover without proving the injury was sustained wholly or in part by a cause for which the defendant was responsible."

This was the ratio decidendi of the case. Since I do not take it as authority for the proposition that it was not negligence to allow the space of 8 11/16 inches to exist between the two doors, it would be in the nature of a digression to examine the evidence in that case in order to determine whether it presented initiatory causes of the claim more consistent with negligence of the defendant than with non-negligence.

The defendants also rely on *McGrell* v. *Buffalo Office Building Co.*, 1897, 153 N. Y. 265, 47 N. E. 305, 306, which tends to support their position. In that case a 9½ year old girl was killed in an elevator. In an action for her death, it was alleged that the elevator was so unskillfully operated as to cause a violent jolt which threw the girl against the bars in the shaft or well of the elevator; that the defendants omitted to provide any door to the car or to properly guard the opening through which persons entered the elevator, and that the bars used in the construction of the shaft were insufficient. The evidence showed that the child was standing at the back of the elevator, and suddenly sprang forward and was caught by the grating bars and fell with her head between the bars and the elevator floor and was killed. The court in denying recovery said:

"While it was the defendant's duty to provide a safe and suitable car, appliances, and other machinery for the operation of its elevator, and for the accommodation of its passengers, and to exercise strict diligence in that respect, still the law did not impose upon the defendant the

duty of providing for their absolute safety, so that they should encounter no possible danger or meet with no casualty in the use of the appliances provided."

With the abstract proposition announced by the court in the above quotation, I have no quarrel. The plaintiff does not contend that the defendant were insurers. However, it must be observed that the *McGrell* case is fifty years old. Many improvements have been made in elevators since that case was decided. It should also be noted that in that case the child sprang forward and grabbed the bars. In the case at bar, there is no evidence of the child springing or grabbing anything.

The plaintiff cites *Kranzusch* v. *Trustee Co.*, 93 Wash. 629, 161 P. 492, 494. That case was similar to the case at bar. The defect relied on by the plaintiff in that case was the protrusion of the landings about three inches into the elevator well. The plaintiff's child's head was caught between the floor of the elevator and protruding landing. The court said:

"We think also that the jury were warranted in finding that the elevator was negligently constructed and inherently dangerous, and that this was the cause of the death of the child. It may not be negligence in itself to leave projecting floors in the elevator well, or to construct indicators so that they project into the well. Nor, perhaps, is it negligence in itself to operate an elevator cage with an open door. But to operate an elevator where there is a combination of these conditions is negligence."

In the case of *Smith* v. *Odd Fellows Bldg. Ass'n*, 46 Nev. 48, 205 P. 796, 23 A. L. R. 38, the plaintiff's decedent was injured by having his foot caught between the floor of the elevator and a casing projecting into the elevator shaft. There was no door on the elevator cage. The court held that this was sufficient to justify an inference of negligence by the owners of the building.

The defendants contend that there was nothing within the experience of operations of buildings with elevators similarly constructed to indicate that the elevator in this

case was dangerous. I do not think the occurrence of an accident of this nature was beyond the bounds of reasonable foresight.

In *Siegel, Cooper & Co.* v. *Trcka,* 218 Ill. 559, 75 N. E. 1053, 1056, 2 L. R. A., N. S., 647, 109 Am. St. Rep. 302, the plaintiff was thrown down on the floor of an elevator in which he was riding in such a manner that his foot projected over the front edge of the elevator floor, the elevator cage having no front door. His foot was caught and crushed between the floor of the elevator, and the top of the aperture at one of the landings. The court said:

"This question of construction was not so intricate but what the jury could understand the situation, and it was their province to say whether appellant was at fault in maintaining the arrangement adopted by it."

In *Russo* v. *Morris Bldg. & Land Improvement Ass'n, Ltd.,* 104 La. 426, 29 So. 46, on rehearing 29 So. 50, the court affirmed a finding of negligence in the construction of the elevator where there was sufficient space between the front of the elevator and the well of the shaft, for the arm or leg of a person and there was no door in the front of the elevator cage. See also *Mitchell* v. *Marker,* 6 Cir., 62 F. 139, 25 L. R. A. 33, 10 C. C. A. 306, and *Beidler* v. *Branshaw,* 65 N. E. 1086, 200 Ill. 425.

*Atkeson, et ux.* v. *Jackson Estate,* 72 Wash. 233, 130 P. 102, 104, was a case very similar to the case at bar, the only material difference being that in that case the elevator was automatic. In affirming a finding of negligence in the construction of the elevator, the court said:

"But, notwithstanding the fact that the elevator in question does not differ in construction materially from the elevators in common use, we think the trial court correctly decided that the manner in which this elevator was constructed and operated in this particular instance constituted negligence. * * * And * * * it is not too much to say that the appellant should have had a door or gate by which the entrance to the elevator cage itself could have been closed."

See also *Shellaberger* v. *Fisher,* 8 Cir., 143 F. 937, 5 L. R. A., N. S., 250.

In the case of *Strobel* v. *Park,* 292 Pa. 200, 140 A. 877, 57 A. L. R. 253, it was held that one operating a passenger elevator in his building must, for the safety of passengers, provide and make use of the best and most improved machinery and devices in general practical use. The court further held that operating a passenger carrying elevator without protection on all sides is negligence.

The rule is stated thus in 18 Am. Jur. 528:

"According to the prevailing rule the owner or operator of an elevator is bound, in the first instance, to use the highest degree of care in the construction of the elevator. He is bound to use the utmost care and skill in the choice of the machinery and to install such improvements and safety devices as experience has shown to be practicable."

And at page 529, it is said:

"If a defect in construction is a patent omission of necessary protection the owner is generally liable. Thus, if an accident may reasonably be anticipated as the natural and probable result of the absence of guards or doors on all sides of passenger elevator cars, the failure to provide this protection is per se negligence."

And at page 531, it is said:

"The owner or operator of an elevator is bound to use the utmost skill in the maintenance of the elevator and to install such improvements and safety devices as experience has shown to be practicable."

In this case there was no serious conflict in the evidence, as to the construction of the elevator and shaft. The question of whether or not there was negligence in the construction was properly submitted to the jury.

While I am not prepared in this case to lay down the owner's duty in regard to construction as absolutely as it is laid down in many of the cases above quoted, I have hereunder indicated my views in regard to the duty of owners and operators of elevators to keep abreast of improvements, and in the matter of construction.

Elevators, like nearly all mechanical devices, by their very nature have some inherent dangers. Whosoever undertakes to operate a passenger elevator ought to take every *reasonable* and *practical* precaution to minimize this danger. Whenever modern appliances and inventions are devised which if installed would reduce the danger, such devices ought to be installed unless the cost of such installation would be greatly out of proportion to any safety benefit or improvement to be thereby attained. Thus, if a new improvement could not be installed without reconstructing the elevator shaft, perhaps the owner of the elevator would not be bound to introduce it. However, where the mechanical safety improvement cannot be used, the standard of diligence and care required of the person operating the elevator must be, in view of the absence of such device, proportionately higher. Thus, if it is physically not feasible or only feasible with extraordinary expenditure to install safety improvements, the operator of the elevator must take extra precautions to assure that all passengers are protected from the dangers which are present only because of the absence of such mechanical safety features.

I agree with Mr. Justice WADE that since the question of contributory negligence was resolved by the jury in favor of the plaintiff, it is unnecessary for us to determine the question of whether or not the contributory negligence of the mother and aunt, had such been found to exist, would be imputed to the plaintiff, the father. This question is reserved until such time as it shall properly come before us.

As to the testimony of the witnesses Snydergaard and Barlow (the witnesses who testified to having ridden the elevator, and to the jerking of the elevator on two separate occasions prior to the accident), I think it was admissible, but only for the limited purpose of showing defendant corporation's knowledge of the defective condition of the elevator, or that the elevator could operate in a jerky manner. See 18 Am. Jur. 561.

The point next raised by appellants is as to the correctness of the court's instructions. The court's instruction No. 1 was practically a verbatim restatement of the pleadings. Defendants excepted to the *whole* of that instruction on the ground that it failed to frame the issues for the jury, and contained an almost verbatim restatement of the complaint.

While the reading of pleadings verbatim to the jury is a practice not ordinarily to be commended, and has been condemned many times by this court, it is not per se reversible error, and one relying upon it must show prejudice. My views on this question are stated in a dissenting opinion in *Shields* v. *Utah Light & Traction Co.*, 99 Utah 307, 105 P. 2d 347. Of course, if the court reads parts of the pleadings unsupported by substantial evidence, there could be prejudicial error. The error in such case would be, not in reading pleadings verbatim to the jury, but in submitting to the jury an issue not supported by the evidence. So also, where the pleadings are ambiguous, or are couched in language so technical or complicated that a reading of the pleadings to a lay jury would confuse rather than enlighten them, then such reading of pleadings to the jury could be prejudicial. But where the language of the pleadings is clear and simple, even though stated in legal phraseology, the reading of such pleadings is not prejudicial error. While ordinarily the court should not read the pleadings to the jury, it might be difficult, if not impossible, in many cases to state the issues accurately throughout in the language of laymen. Resort to the terminology and phraseology of the legal profession can hardly be avoided. Much of so called legal language has become laymen's language. Where the instructions are clearly worded and the meaning of technical words and phrases is explained to the jury in understandable language, they are not open to objection, assuming, of course, that they are proper in other respects.

Defendants have argued in this court that the first instruction was also erroneous in that it submitted to the jury issues of fact unsupported by any substantial evidence. As has been heretofore noted, defendants have contended that

there was no substantial evidence of *any* negligence and that the case should therefore, have been taken from the jury. As I have attempted to point out above, all of plaintiff's allegations of negligence were supported by substantial evidence with the possible exception of the doors being open at the time the elevator was started. If the trial court committed prejudicial error in giving instruction No. 1, that error was in submitting to the jury the question of whether or not the doors were left open at the time the elevator was started upward. But, as we have already seen, the defendants' exception was to the *whole* of instruction No. 1 and not to that particular part of the instruction which submitted to the jury the question of whether or not the doors were left open, and not on the ground that the court submitted allegations not supported by the evidence, but that the instruction was erroneous because it consisted of reading the pleadings verbatim to the jury. It is well settled in this jurisdiction that where an exception is taken to the whole of an instruction, the exception will not be sustained unless the whole instruction is bad. If the instruction is partially correct and partially erroneous, the erroneous part of the instruction must be pointed out by the party taking exception thereto. Since the exception was to the whole of the instruction and only a part, if any, of the instruction was erroneous, it follows that the assignment of error cannot be sustained. It is admitted that there was no difficulty in separating that part of the instruction respecting the allegation pertaining to the starting with open doors in regard to which it is claimed there was no evidence from the other parts of the instruction pertaining to other allegations of negligence which were supported by evidence.

I concur in the view of the prevailing opinion that the exception to the first paragraph of instruction No. 4 amounted to nothing more than an exception to the court's refusal to grant a peremptory. instruction in favor of the defendants, and therefore was without merit.

In regard to both instruction No. 1, and the first paragraph of instruction No. 4, defendants have argued that

there was no evidence of negligence. This is just another way of raising the same question as is raised on motion for nonsuit or directed verdict. Where plaintiff has alleged several different grounds of negligence, an exception to an instruction submitting all the grounds of negligence to the jury should be so phrased that it will call to the court's attention the absence of proof of the particular item not proved. An exception to the effect that there is no evidence in support of *any* of the allegations of negligence does not call to the court's attention the want of evidence in support of any particular allegation. Such an exception is calculated to mislead the court. The exception should point out those allegations of negligence unsupported by the evidence.

I freely admit that where it should be apparent to the court that there is no evidence to support an allegation the court has the responsibility of withholding such issue from the jury. And it may be further admitted that where the court frames the issues to be submitted to the jury in its own language rather than indulging in the easy—one might almost say lazy—method of reading the pleadings verbatim, there is a much greater likelihood that the mind of the court will be alerted to those allegations unsupported by evidence because the very process of picking out, at the end of a trial, the issues in regard to which there is or is not evidence, is a mental alerting, whilst a reading of pleadings tends to be a soporific both to the listener and ofttimes to the reader. Reading the pleadings will not arouse the mind to this alerting process as effectively as would the rephrasing of the issues in his own language with his mind pointed on the evidence while he did that. But the court's reading of the pleadings as a recitation to the jury of the issues presented to it does not excuse counsel in taking an exception to the *whole* of the instruction purporting to recite the issues on which the jury must pass giving as his ground for the exception that *none* of the issues are supported by the evidence.

Hence, while I admit for the purposes of this discussion that the court was in error in submitting as an issue the question of whether the elevator started while the door

was open, I do not think it lies in the mouth of counsel to contend that the court erroneously submitted instructions one and four (which instructions must be coupled together) when the alleged error pointed out was that there was no evidence to support *any* of the allegations of negligence. There being ample evidence to support all of the allegations except perhaps that regarding the open door this sort of exception would naturally be rejected by the court.

As to the assignments of error not discussed in the prevailing opinion, I agree that they are without merit.

For the foregoing reasons, and for those reasons only, I concur.

LATIMER, Justice (dissenting).

I dissent. The parties are referred to as they appeared in the court below.

A study of the pleadings, requests for instructions, and instructions given by the court convinces me that the trial judge not only erroneously instructed the jury, but further, that he intended to give one important instruction which, through inadvertence or mistake, he failed to include in his charge. In view of the incomplete charge to the jury, the prevailing members of this court have upheld a verdict that appears to me to be founded on confused and fatally deficient instructions.

This opinion will not establish the law of this state, and I would not file it were it not for the fact that I have hopes it will cause the bench and bar to discard an unsatisfactory method of procedure sometimes used in the trial of cases in the district courts. All members of this court agree that this case reached this court with the issues beclouded by uncertainty and confusion, and it is hoped the opinions in this case will prevent repeat performances. It is not intended to be critical of counsel or of the court. It is only intended to call attention to a practice that has been repeatedly condemned by this court. This practice consists of reading pleadings verbatim to the jury for the purpose

of framing issues, regardless of whether or not evidence has been presented to sustain the allegations.

It should be noted at the outset that the main opinion dwells at length with the difficulty encountered by a jury when a trial court instructs in the language of the pleadings, while the concurring opinion finds the practice not so offensive. In addition, the two opinions seem in disagreement as to whether or not faulty construction of the elevator shaft was properly submitted to the jury. The differences in the opinions only illustrate the difficulties that must have been encountered by the members of the jury when they attempted to interpret the instructions.

The prevailing members of the court, while not in agreement, concur in upholding the verdict on the three following grounds: (1) That there was sufficient evidence of negligence other than that of the open door to sustain the verdict; (2) even though the court committed error in instructing the jury by reading the pleadings, the error was not prejudicial; and (3) counsel for appellant failed to properly except to the trial court's instructions.

Admittedly, there was sufficient evidence of starting the elevator too soon to present a jury question on this ground of negligence. If this were the only question presented, there would be no dissent from the results. This question is, however, so mixed up with other elements of negligence that segregation is not quite so easy as is indicated in the prevailing opinion.

While much is said in both opinions regarding the allegations of the complaint and the instruction in conformity therewith, the critical allegations are not set forth. I believe to better understand the problem it is well to set forth the allegations of the complaint in respect to defendant's negligence. Plaintiff first alleges that defendant company owed a duty to provide a safe place for the public to ride, but notwithstanding this duty the elevator shaft was so negligently constructed that when the floor of the cage was opposite the floor of the halls, there was an unoccupied space of 4 to 5 inches between the floor of the cage and the door

leading into the elevator. Plaintiff next alleges a duty to keep the particular elevator in a proper condition, and alleges a violation of this duty in that for several days prior to the accident, the cage had started with a jerk and that defendant company, by the exercise of ordinary care, should have known the elevator was unfit for use. The next paragraph is quoted herewith:

"That immediately upon said Nora Fowler and her said minor children entering said elevator and without giving said Nora Fowler and her said minor child David John Fowler sufficient time to get completely into said elevator or to turn around and face the door leading into said elevator from the hall and without closing the door so leading from the hall into said elevator the defendant Norma Peterson, acting for and on behalf of the defendant corporation, negligently, suddenly and with a violent jerk started upward the said elevator and as a direct and proximate result of the negligence of the defendant corporation to permit the vacant space of 4 or 5 inches to exist between the floor of said elevator No. 2 and the door leading thereto from the hall and in failing to keep said elevator in proper condition to be used and the negligence of the defendant Norma Peterson, in suddenly and violently starting said elevator without closing the door leading into the hall as herein alleged the said David John Fowler was thrown from the floor of said elevator into the elevator shaft below the floor of said elevator and the said David John Fowler fell to the bottom of the elevator shaft of said building and was thereby immediately killed."

The allegations of the complaint paint the following picture to me. The mother and her minor children entered the elevator, and before sufficient time had elapsed for them to turn around, the elevator was started suddenly and with a jerk of sufficient violence to catapult the boy out through the open door and down the shaft into the bottom of the elevator pit. No difficulty would be encountered had the same pitcure been painted by the witnesses. However, the evidence disclosed that the boy was not thrown out the open door; he was crushed in the cage. The problem in this case arises from the difference in the pictures suggested by the allegations of the pleadings and the picture established by the evidence. There is no similarity. To emphasize wherein I disagree with the prevailing members of the court:

The jury was charged as though the pleadings and the proof in support thereof were substantially the same, and permitted to return a verdict on the former, regardless of the variance between the two. This court places its stamp of approval upon such a procedure, and in this I disagree.

Mr. Justice WADE in his prevailing opinion cites cases in which this court has frowned on the practice of reading the pleadings to the jury. Before discussing that practice, I desire to mention another not particularly referred to by him.

In the case of *Shields* v. *Utah Light & Traction Company*, 99 Utah 307, 313, 105 P. 2d 347, 350, this court announced the following principle:

"* * * in setting forth the claims of the parties to the jury, *only that portion of the pleadings on which evidence had been introduced, should be mentioned at all*, although the reading of the pleadings to the jury is generally condemned. Randall's Instructions to Juries, § 404; *Hammer* v. *Liberty Baking Company*, 220 Iowa 229, 260 N. W. 720; *In re Thompson's Estate*, 211 Iowa 935, 234 N. W. 841; *Welton* v. *Iowa State Highway Commission*, 211 Iowa 625, 233 N. W. 876, 877; *Smith* v. *Columbus Buggy Co.*, 40 Utah 580, 123 P. 580." (Italics mine.)

While Mr. Justice Wolfe dissented in part from the above decision, I quote a paragraph from his opinion found at page 321 of 99 Utah, and at page 353 of 105 P. 2d:

"*Stating to the jury a claim as contained in the pleading when there was no evidence to support it is a more serious transgression, but in this case I think it could not have been prejudicial in view of the fact that the court notified the jury that the language of the pleadings was not evidence but only the claim as made by the plaintiff.* Since there was no evidence to substantiate it and no instruction relating to it, we must assume that the jury did not consider it as evidence and did not take it into consideration. I think the judgment should be affirmed." (Italics mine.)

The court in that case did tell the jury the language of the pleadings was not evidence. Not so in this case. Neither did the court in this action inform the jury that the quoted pleadings were only the claims as made by the plaintiff.

Because the instruction which defined the issues in specific terms (Plaintiff's request No. 4) was not given, the issues in this case were only mentioned by the trial judge's quoting the pleadings. In effect, the jurors were given the pleadings and told they could frame the issues of negligence therefrom.

The most difficult question presented by the record is, was there sufficient evidence introduced by the parties to present a jury question on whether or not the elevator door was open when the elevator started? I agree with Mr. Justice WADE that there was insufficient evidence on this question to submit it to the jury. In Mr. Justice Wolfe's concurring opinion, he begs the question, but does set forth that there was some evidence. The expression used,

'that it was a mole-hill against a mountain, when compared to the evidence that it was closed,"

might be well chosen. This does not, however, take care of the possibility that the jury might have accepted the mole-hill in preference to the mountain of evidence. Apparently, counsel for respondent as well as the trial judge concluded there was sufficient evidence to permit the jury to do this, and it does seem most unusual for us to say the trial court erred when he considered there was sufficient evidence, but that the jury was too smart to be misled and could not reasonably have arrived at the same conclusion. It is extremely difficult for judges to determine when there is sufficient evidence produced on an issue to justify its submission to a jury, and members of this court are no exception to this rule. As a matter of fact, the various opinions in this case indicate that this question of the open door was one of those where considerable difficulty was encountered. If it is difficult for us to determine whether there is any or sufficient evidence of this particular negligent act, it must have been most difficult for a juror. Yet the prevailing opinion is founded on the principle that the jury could not have been misled.

The prevailing opinion reasons that, regardless of the insufficiency of the evidence on the question of the open door, the starting of the elevator too quickly or with a jerk was the proximate cause of the boy's death; and these having been alleged, there was no prejudice in submitting the other issue of negligence, as it, in effect, played no part in the cause and effect. It was, so to speak, an unimportant or incidental event that occurred after the primary negligence had put the forces into effect. Concretely, according to my understanding of the opinion, whether or not the boy was thrown out of the door and fell down the shaft or was killed by being crushed by the bar makes no difference, as the time and manner of starting the elevator was the negligence. This, of course, overlooks the important element that the jury could have found the appellants negligent if the elevator was not started suddenly with a jerk or not started too quickly, provided it was started at all with the door open. When people are fairly well crowded in an elevator, as was the case here, it may be the grossest kind of negligence to start the car with the door to the hall open, even though the elevator were to make the smoothest possible start and the occupants were to be all facing the door. The evidence in this case shows the elevator was nearly filled to capacity, and the little boy was nearest the door. Under these facts, the writer of this opinion would hold the defendants negligent though the parties had completely turned around, though they had time to adjust themselves, and though the elevator started with a smooth and an even start, provided the door to the hallway was open and the boy fell out the door. Permitting an open space to exist through which the boy might fall into the pit would be negligence. It is not uncommon to be thrown off balance by the ordinary upward motion of the cage, and many of the ordinary safety features are solely for the purpose of preventing the car from moving before the door is closed.

While the prevailing and concurring opinions are not in agreement on the question of whether or not it is error to read the pleadings, both agree there was no prejudice in this

case. There are two instructions given by the court which the prevailing opinion indicates are sufficient to satisfactorily instruct the jury in this case. The first one is the one criticized by the prevailing opinion because the instruction was, in effect, a reading to the jury of the complaint and answer. The criticism of this procedure by Mr. Justice Wade is wholesome, and trial judges would do well to follow the practice of framing the issues on only those allegations supported by the evidence. It is all too frequently that the pleader puts in the complaint every possible ground of negligence. On many of the trials, the evidence fails to establish some or all of the grounds alleged, and the jury should not be permitted to speculate on those alleged but not sustained by any evidence. While, as Mr. Justice Wolfe points out in his opinion, this may be a simplified way of expressing to the jury the issues involved, this method should certainly not be used unless the allegations that are not supported by some substantial evidence are stricken and are withheld from the jury's consideration. If that is not done, the pleadings might just as well be sent to the jury room for the jury to determine the issue.

In order to determine the issues, if any, presented to the jury, two instructions must be considered together. The first (the court's instruction No. 1) quoted generally the allegations of the complaint, including the paragraph quoted verbatim earlier in this opinion. This is followed by the allegations generally, of the answer. This instruction, together with the court's instruction No. 4, furnish the only guide posts for the jury to follow on the question of negligence. Instruction No. 4 reads, in part:

"You are instructed that in order to recover in this action, the burden is on the plaintiff to prove by a preponderance of the evidence that the death of David John Fowler was proximately caused by the negligence of the defendants, and that said negligence consisted of one or more of the acts or omissions on the part of the defendants alleged in the complaint as negligence. * * *"

As I interpret the two instructions, the jury was informed of plaintiff's pleading, and then told that in order to recover,

402

plaintiff must establish by a preponderance of the evidence one or more of the acts or omissions on the part of the defendants alleged in the complaint. This, of course, includes all grounds alleged in the complaint whether or not there is evidence to sustain them. I see no escape from the conclusion that under the instructions given, the jury could have reasonably based its verdict solely on the alleged ground that the elevator door was open.

While admittedly the complaint is subject to different constructions, I believe an acceptable test is to take plaintiff's own construction of the pleading. This can be determined by a reference to plaintiff's request for instruction No. 4. This is the instruction which the trial court evidently intended to give, as it is marked "given"; but the record conclusively shows otherwise. I am assuming that plaintiff made this request pursuant to his interpretation of his own pleading and pursuant to a belief that the evidence was sufficient to present a jury question on the three separate grounds of negligence indicated. Plaintiff's request for instruction No. 4 was as follows:

"You are further instructed that if you find from a preponderance of the evidence that on or about April 27, 1945, Nora Fowler, the mother of the deceased child, David John Fowler, entered the elevator referred to in the testimony with said child for the purpose of being transported to one of the upper floors of the Medical Arts Building there to have treated the teeth of one of her minor children who accompanied her, and you also find by a preponderance of the evidence that Norma Peterson was negligent in one or more of the following particulars: (a) In not giving the mother Nora Fowler, and her said minor child, David John Fowler, sufficient time to get completely into said elevator and to turn around and face the door leading into said elevator from the hall; (b) or in failing to completely close the door leading into said elevator from the hall; (c) or in starting said elevator upward with a violent jerk and if you further find that as a proximate result of one or more of such negligent acts, if any, the child David John Fowler was killed, then in such case you will find for the plaintiff and against both of the defendants, Medical Arts Building Company, a corporation, and Norma Peterson."

It will be observed that counsel for plaintiff specifically sets out three separated and distinct grounds of negligence

on the part of defendants. These include the specific ground of failure to close the door. If then, plaintiff's counsel was of the opinion that there was a jury question on the open door, and the trial judge's notation "given" on the request for instruction indicated he was of the same opinion, then I deem it quite unusual for this court to say that no reasonable juror could have arrived at the same conclusion.

While I am mindful of the constitutional provision that this court shall not reverse a jury's verdict when no prejudice has resulted, I am also mindful of the difficulties encountered when this court assumes to say the jury could not have been misled. I cannot, of course, say the jury based its verdict in this case on the fact that the door was open. All I can say is that the trial court authorized the members to return a verdict on that ground, and while six members of the jury found against the defendants, I doubt that the prevailing members of this court can say that not one of these jurors could have based his verdict upon the fact that the door was open. The trial judge specifically referred to this ground when he read the first instruction to the jury, and he must have concluded a reasonable juror could so find. To hold that the defendants were not prejudiced thereby would be to charge a juror with being unreasonable if he based his verdict on a ground of negligence that the trial judge had informed him was in issue.

When this court attempts to determine whether or not prejudice resulted from the giving of an erroneous instruction, it cannot re-try the case, determine the credibility of witnesses, or substitute its judgment for the verdict of the jury; it can only search the record and determine that the issue and evidence are so closely related to the subject matter of the instruction that a reasonable jury could be mislead or confused to the detriment of a party to the action. In a close case, such decision is one fraught with difficulty, while in an action wherein the evidence is clear and convincing, a determination may be made without interfering with the verdict arrived at by the jury. As was said by Mr. Justice Wolfe, in his support of a verdict in

the case of *State* v. *Rasmussen*, 92 Utah 357, 375, 68 P. 2d 176, 184:

"* * * What may be prejudicial on a close case may not be in a case where the evidence is fairly clear. If we take a case where there is a mountain of evidence for one side and a molehill of evidence for the other side, an instruction, which in a close case would likely puzzle the jury or influence them in such case may not be prejudicial, because, regardless of instructions it would be very unlikely that they would decide in favor of the molehill.

"Prejudice cannot be judged purely intrinsically on the claimed error, but in view of the whole case. We can hardly consider the jurors as if they were a body of highly trained lawyers, wool combing the evidence and instructions for highly technical points upon which to determine their decision. * * *"

That the instruction was prejudicial in the case at bar seems to me to be apparent. The issue was pleaded, the statement of Mrs. Fowler was impressive even though obtained with some degree of difficulty, counsel for appellant in his statement to the jury argued it as one of the grounds for recovery, the record is barren of substantial evidence to sustain it, and the court instructed on it. No one could read the record and determine that it was not one of the very issues of negligence upon which the plaintiff was attempting to recover. It started out as the underlying issue of plaintiff's cause of action, and at no time was it abandoned. On the contrary, it was stressed throughout the trial and was so blended in with other issues, evidence and instructions, as to be inseparable. It was not necessary for the jurors to comb through the record to find the prejudicial evidence. All they needed to remember, was the statement of Mrs. Fowler that the elevator door was open.

This court in the case of *Jensen* v. *Utah Ry. Co.*, 72 Utah 366, 400, 270 P. 349, 361, treated the subject of prejudice in a civil action, and announced the following principle:

"Lastly, the respondent urges that, because of our statute (Section 6622, Comp. Laws Utah, 1917) providing that a judgment shall not be reversed for errors or defects which do not affect the substantial rights of the parties, and since the burden is on the appellant, not only to show error, but also prejudice affecting some substantial right,

he ought not to be permitted to open only such portion of the record as he chooses and close the balance of it to the respondent. Certainly not. The burden, of course, is on the appellant to show, not only error, but prejudicial effect as well. But how may he show that? It often has been broadly stated that all errors are presumed to be prejudicial. We think the better rule is that not all committed errors in the trial of a case are presumptively or prima facie prejudicial, for some committed errors are merely abstract, or on their face immaterial, or otherwise are not in and of themselves calculated to do harm. Still the party against whom the error was committed may show by the record that it resulted to his prejudice in some substantial right."

The submission of the issue of the open door to the jury permitted the jury to find against the defendants on a theory without evidence to sustain it. I doubt there would be any difficulty encountered by the members of this court if the only issue involved was whether or not the elevator was started while the door was open. Unquestionably the evidence would not sustain a verdict on this ground alone, and I cannot conclude from this record whether or not the jury did base its decision on this ground of negligence. To permit a jury to render a general verdict, including issues with or without evidence to sustain them, so intermingles the good with the bad it is impossible to determine whether the verdict should be sustained because the jury selected the proper issue, or the verdict should be reversed because the jury chose the improper one. As far as the jury was concerned, it was advised by the court that either would be proper, and to assume the jury made the proper segregation when the court itself failed to do so is making an assumption not justified by this record.

Some of the other cases decided by this court dealing with prejudice will be referred to. Mr. Chief Justice Elias Hansen in the case of *Woodward* v. *Spring Canyon Coal Company,* 90 Utah 578, 592, 63 P. 2d 267, 273, stated:

"* * * It is the settled law in this jurisdiction that negligence must be both charged and proved. A failure of either is fatal. Here there was a failure of both. It is equally well established that it is prejudicial error to permit the jury to find a verdict based upon

either negligence not charged or negligence charged but not shown. * * *" (Citing cases.)

This court, in the case of *State* v. *Johnson*, 76 Utah 84, 9, 287 P. 909, 911, announced the rule to be as follows:

"* * * The question presented is as to whether error was committed in submitting to the jury a material issue upon which it is claimed there was sufficient evidence to support it, and, if so, whether the error was prejudicial. If in a civil case where several acts of negligence are charged, each constituting actionable negligence, and the evidence is insufficient as to one of such acts, but against objections nevertheless is submitted to the jury and a general verdict rendered in favor of the plaintiff, hardly any one would contend that no prejudice resulted on the ground that the evidence was sufficient to sustain the verdict on the other alleged acts. * * *"

In the case of *Wilcock et al.* v. *Baker*, 65 Utah 435, 439, 238 P. 253, 255, this court had previously passed on this question:

"* * * We are of opinion that the pleadings are sufficiently broad to include the issue of fact submitted. But not only must an instruction be within the issues joined and made by the pleadings, but it must likewise have as a basis some testimony to support a finding by the jury upon the issue of fact submitted by the instruction. *Davis* v. *Midvale City*, 56 Utah 1, 189 P. 74; [*First Nat.*] *Bank* v. *Taylor*, 38 Utah 516, 114 P. 529; *Sagers* v. *International Smelting Co.*, 50 Utah 423, 168 P. 105; *Lochhead* v. *Jensen*, 42 Utah 99, 129 P. 347."

It being my opinion that the instructions were incomplete, confusing, erroneous, and prejudicial, I now pass to answer the contention made in both opinions that no proper exceptions were taken to the instructions. I first desire to point out that I have no serious dispute with the rule that when an instruction is given which is erroneous in part and correct in part, that an exception to the whole instruction is not sufficient. That unless the whole instruction is bad, the exception is not well taken.

The difficulty in this case is not settled by this rule. This for the reason that both instructions are correct and neither

is divisible into good and bad parts. Notice that the first instruction merely tells the jury that plaintiff alleges the following cause of action, and that defendant admits certain of the allegations, denies other, and pleads the affirmative defense of contributory negligence. There is no part of that instruction that incorrectly states the law. The plaintiff did so plead, and the defendant did so answer. Counsel for appellants took the only course open to him; he did except because the court failed to frame the issues for the jury, and because the instruction contained an almost verbatim restatement of the complaint. If the court is permitted to state what the plaintiff pleads, I can hardly reason out that counsel for the defendants is at fault because he failed to complain that the court was accurate in stating what the plaintiff alleged, and that to correct the instruction the court should be inaccurate. In my opinion, if the court elects to instruct the jury in the words of the pleadings, the judge should either direct the jury's attention to the fact that the pleadings do not frame the issues and give other appropriate instructions on the issues, or make certain that there is sufficient evidence to make a jury question on all the pleaded issues. There is no appropriate manner of excepting to an instruction that is legally correct.

The same reason applies to instruction No. 4, as given. This was the burden of proof instruction, and is correct in every detail. Certainly, before the plaintiff could recover he must have established by a preponderance of evidence one or more of the acts of negligence alleged in the complaint. This is a cardinal rule of law. It confines the jury to the framework of the complaint, and prohibits a finding of negligence on acts not within the language of the pleadings.

Had an instruction been given by the trial court defining the issues of negligence, as requested by plaintiff (and as quoted hereinabove), then we might place on counsel the burden of calling the court's attention to the fact that part of the instruction was erroneous. This could have readily been done had the court, as a part of its instruction, informed the jury that if it found by a preponderance of the

evidence that defendants were negligent in starting the car with the door open, it should return a verdict in favor of the defendants. Such an instruction is quite different from one which advises what the pleader alleges, or one which announces the burden of proof.

Out of this case there should come a clear-cut holding as to the duties of the trial court and counsel in regard to the responsibility for properly instructing the jury. Apparently the majority of this court place all the responsibility for the failure of the trial court to properly instruct in this case, on counsel for defendants, because of their failure to properly except to incomplete instructions. In my opinion, the burden to see that a jury is properly instructed should be placed on the court and counsel for both parties, and not solely on one party. Certainly the court has some duty to frame the issues and if a trial judge elects to read the pleadings rather than state the issues in simple and concise language, he should follow the evidence closely enough to see he is not passing to the jury for consideration a pleaded issue of negligence which is not supported by any substantial evidence. Subsection 4, 104-24-14, U. C. A. 1943, places on the trial judge the responsibility of instructing the jury on the law applicable to the case. To present issues upon which there is no evidence is not in keeping with this requirement. I believe the modern trend of procedure is toward the elimination of the necessity of taking exceptions, as, for the most part, such an act is merely a futile gesture. In most of the trials, under our procedure, exceptions to instructions are taken after the jury has retired and after the evidence or lack of evidence on the principal issues has been thoroughly discussed on motion for non-suit and directed verdict. While I am not desirous of overturning sound and well-established rules of procedure, I am of the opinion that we should not take a backward step and extend the doctrine of "failure to except" far beyond the scope of the adjudicated cases. To do so would cause this court to revert to the old concept that he who fails to do that which

is futile has not enlightened the court and therefore cannot complain.

The purpose of taking an exception to part of an instruction is to point out to the trial judge that portion which is incorrect and does not properly state the law. Counsel can neither point out the erroneous part of an instruction that is correct, nor can he point out the erroneous part of an instruction not given. He can, of course, call to the attention of the trial judge the fact that no instruction framing the issues has been submitted to the jury. But why is all this burden cast on one party? The plaintiff in this action had the burden of submitting requests on his theory of negligence, and did so. Plaintiff also has the burden of excepting to the failure of the trial court to give his requested instruction. Through inadvertence, the trial judge failed to submit the instruction, and we now hold counsel for defendant waived his right to claim error because he failed to point out to the court wherein two accurate instructions (one on the burden of proof and the other on the pleadings), when pieced together, were found to be incorrect. The error of the instructions is conceded by the majority of the court, but the judgment is permitted to stand because too high a standard is placed on one party to the proceeding.

The judgment should be reversed and the cause remanded for a new trial.

PRATT, J., concurs in the dissenting opinion of Mr. Justice LATIMER.